IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TAMMY M. PALMER,

        Plaintiff,                                      06cv1385

**ELECTRONICALLY FILED**

     v.

MICHAEL J. ASTRUE,
 COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**MEMORANDUM OPINION**

**February 28, 2007**

     Plaintiff Tammy M. Palmer Michael H. Roach brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") benefits under title XVI of the Act. Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

     After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported by substantial evidence, and therefore will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the determination by the Commissioner.

---

[1] The Commissioner is currently Michael J. Astrue, who was appointed Commissioner on February 12, 2007, and automatically substituted for former Commissioner Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

This Court previously reviewed Ms. Palmer's appeal, and on May 12, 2004, remanded for further proceedings. The procedural history and facts relevant to that proceeding are as follows:

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 27, 2001, pursuant to 42 U.S.C. §§ 401-433 of the Social Security Act. ( R. 80-83). She alleges disability due to rheumatoid arthritis since November 9, 2001. ( R. 80-83). Plaintiff's request for relief was initially denied on March 7, 2002. She filed a request for hearing on April 8, 2002. ( R. 15). An ALJ held a hearing on the matter on November 18, 2002, in Greensburg, Pennsylvania. Plaintiff appeared at this hearing without representation. ( R. 27-29). The ALJ explained that Plaintiff had a right to be represented and detailed how Plaintiff could obtain representation at no immediate cost to her. (R. 27-29). The ALJ also advised Plaintiff that a representative would assist her at the hearing. ( R. 32). Nonetheless, Plaintiff consented to proceed unrepresented. (R. 32). Following the hearing, the ALJ issued an opinion dated December 11, 2002, wherein he denied Plaintiff's claim; finding that Plaintiff was not disabled and that she could perform a significant number of jobs available in the national economy. (R. 21-23).   Thereafter, Plaintiff requested review by the Appeals Council, who denied her request by letter dated September 17, 2003, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review. 20 C.F.R. § 404.981; 42 U.S.C. § 405(g). Plaintiff now appeals to this Court, alleging that the ALJ improperly discounted Plaintiff's allegations of pain; that the ALJ failed to give proper weight to the treating physician's opinion; that the ALJ failed to fully develop the record with an unrepresented claimant; and that the ALJ failed to consider all of Plaintiff's limitations.

## III.    STATEMENT OF FACTS

Plaintiff was thirty-seven years old at the time of the Commissioner's hearing, making her a "younger person" as defined by the regulations. 20 C.F.R. § 404.1563(c). Plaintiff has a 12th grade education. Plaintiff has a lengthy relevant work history as a medical products assembler. Plaintiff filed for DIB, alleging an onset date of November 9, 2001. (R. 81, 91).

Paul J. Killian, M.D. has treated Plaintiff since 1995. In January 2001, he examined Plaintiff and noted that she was doing well at work. (R. 174). However, in March 2001 Plaintiff reported increasing pain and swelling in her hands. (R. 170). X-rays taken at that time showed no evidence of erosive disease. (R. 171). Plaintiff used a combination of drugs to control her arthritis including: Prednisone; Plaquenil; Celebrex; Methotrexate; and Folic Acid. (R. 171).

In a subsequent visit with Dr. Killian on April 24, 2001, Plaintiff was still

high titer rheumatoid positive. (R. 168). Plaintiff's treatment continued through June 2001 when doctors increased her dosage of Methotrexate due to worsened synovitis and increased rheumatoid factor. (R. 169) Dr. Killian specifically noted that he observed normal hair growth and did not mention in his report that Plaintiff complained about any side effects. (R. 169). X-rays again showed no evidence of erosive disease. (R. 169). Plaintiff's medical reports suggest improvement in Plaintiff's condition through December of 2001 (R. 166). Dr. Killian again indicated that Plaintiff was handling her medical regimen well and did not seem to be experiencing side effects from it. (R. 166).

Around December of 2001 Plaintiff was laid off from her current employer. Thereafter, Dr. Killian noted that Plaintiff was doing well because she was not working full time and noted that he was not sure "whether she would like to return to work or whether she should consider disability in light of the fact that she has a chronic illness which will require lifelong medications." (R. 166). At this appointment, Dr. Killian also noted that Plaintiff had a high titer rheumatoid factor positive.[2]

In April of 2002, Dr. Killian noted that Plaintiff had improved dramatically since stopping work because her tendinitis was no longer inflamed. (R. 186). Plaintiff told the doctor that she had applied for disability but that her claim was denied. (R. 186). In response, the doctor told her to reapply because her illness was chronic. ( R. 186). The doctor also said again that "there is no doubt since stopping work she has improved significantly but she still had a high titer rheumatoid factor positive at 311. ( R. 186). 186).

In a letter dated, October 8, 2002, Dr. Killian explained that Plaintiff has "very active aggressive rheumatoid arthritis which is requiring multiple medications." ( R. 87). He also noted that he advised her to apply for disability because of the underlying nature her chronic inflammatory arthritis [renders her] unable to work as her arthritis really flares in the work situation." ( R. 187).

At the administrative hearing, at which Plaintiff was unrepresented, the ALJ asked the vocational expert ("VE") to assume that a hypothetical individual who has the same vocational profile as the claimant and is precluded from performing work requiring lifting or carrying more than ten pounds frequently or twenty pounds occasionally or more than occasional bilateral fine and gross manipulation, but is not prevented from performing a wide range of work at the light exertional level.

Under this assumption, the VE testified that such a hypothetical individual

---

[2]   Statistically, patients with rheumatoid arthritis who have high titer rheumatoid factor are more likely to have severe disease and systemic involvement than other patients.

could perform such light exertional work as a dressing room attendant, an information clerk, a microfilm mounter, and a photo machine operator. The VE also testified that such a person could work as a laminator, a surveillance monitor, a type copy examiner, and a plastic design applier.

The VE also opined that if the hypothetical individual could not remain productive for at least 45 minutes every hour of the workday, all of the cited jobs would be compromised.

Based on a thorough review of the record, testimony, and medical reports **t**he ALJ made the following specific findings:

1.   The claimant met the disability insured status requirements of the Act on November 9, 2001, her alleged onset date, and continues to meet them through December 31, 2006.

2.   The claimant has not engaged in substantial gainful activity since November 9 2001.

3.   The medical evidence establishes that the claimant has a severe impairment consisting of rheumatoid arthritis. However, the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation No. 4.

4.   The claimant's allegations of disabling pain and limitations, when evaluated in accordance with Social Security Ruling 96-7p and Regulation 404.1529, are not entirely credible as they are not consistent with the clinical and objective findings, the claimant's range of activities, and the other evidence of record.

5.   The claimant's impairment precludes work requiring lifting or carrying more than 10 pounds frequently or 20 pounds occasionally or more than occasional bilateral fine and gross manipulation, but it does not prevent her from performing a wide range of work at the light exertional level (20 C.F.R. 404.1545).

6.   The claimant is unable to perform her past relevant work as an assembler of medical products.

7.   The claimant's residual functional capacity for the full range of light work is reduced by the additional limitation set forth in Finding No. 5.

8.   The claimant was 36 years of age on November 9, 2001, her alleged onset date, and is currently 37 years of age, which is defined as a "younger individual" (20 C.F.R. 404.1563).

9.   The claimant has a high school education (20 C.F.R. 404.1564).

>    10.   In view of the claimant's young age and residual functional capacity, the issue of transferability of work skills is not material (20 C.F.R. 404.1568).
>
>    11.   Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Section 404.1569, and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulation No. 4, would direct a conclusion of "not disabled."
>
>    12.   Although the claimant's additional limitation does not allow her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are a dressing room attendant, an information clerk, a microfilm mounter, and a photo machine operator at the light exertional level. These jobs exist in significant numbers in the immediate area of the claimant's residence as well as in the national economy.
>
>    13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. 404.1520(f)).

Memorandum Opinion May 12, 2004, (doc. no. 10 at Civil Action No. 03-1374), at 2-6.

This Court found that the ALJ failed to adequately develop the record and failed to adequately consider the medical opinion of Dr. Killian, plaintiff's long time treating physician, and held that the ALJ's findings of fact and decision were "not supported by substantial evidence because he improperly dismissed Plaintiff's treating physician's opinion, and he failed to fully develop the record at the administrative hearing and then used the absence of such information to support his determination of Plaintiff's RFC." Id. at 17.

On remand, following a hearing on August 30, 2004, at which plaintiff testified and was represented by counsel, the ALJ granted plaintiff a closed period of DIB from November 1, 2001 through July 29, 2004. However, the ALJ determined that plaintiff's condition had medically improved by July 30, 2004, to the point where she would be able to use her hands for sedentary occasionally and that she was capable of sedentary work with that limitation, with a sit/stand option and inability to climb ladders, ropes or scaffolds, or work at heights. The VE testified that

there were a number of jobs available for someone of plaintiff's limitations and RFC, including receptionist, cashier, hand packer and gate person, which existed in significant numbers in the national economy.

The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the deemed decision of the Commissioner.

On appeal, plaintiff raises only one issue, that the ALJ gave undue emphasis to one item of medical evidence, a letter of Dr. Elliott Goldberg, the rheumatologist to whom Dr. Killian had referred plaintiff for treatment. Dr. Elliott's letter of July 29, 2004 stated, that through a regimen of several medications, including Celebrex and Prednisone, plaintiff's condition had become "completely stable and without any symptoms whatsoever," and that "her disease is in remission." Exhibit 10F, R. 258, (doc. no. 4-6 at 30 of 55). Plaintiff argues that her improvement can be explained by the fact that she has not been working, and that Dr. Goldberg's opinion must, therefore, be discounted.

The Court has reviewed the record and finds that Dr. Goldberg's opinion is unequivocal and is supported by his progress notes, which indicate that on physical examination of March 11, 2004 plaintiff's reflexes, coordination and muscle strength were all normal, as was her blood work, and by plaintiff's own testimony at the hearing about her activities of daily living, which were fairly substantial and which also demonstrate significant improvement of her condition through the regimen of medication she is taking. Dr. Goldberg did note that plaintiff's condition improved since she stopped working, but attributed her improvement mostly to the medication combination.

The Court finds, therefore, that Dr. Goldberg's opinion and notes, and plaintiff's activities of daily living, provide substantial evidence supporting the ALJ's determination that

her condition had improved to the point where she could perform a restricted range of sedentary jobs that were available to her in the national economy. Therefore, the Court will affirm the decision and issue an appropriate order.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc: All counsel of record

Preston T. Younkins, Esquire
Jessica Smolar, Esquire